Our next case is Edgerly v. City and County of San Francisco. I'm going to reserve 10 minutes. Good morning. In this matter, the City and County of San Francisco has a long-standing unconstitutional policy of arresting people under 602L, now M, without probable cause and strip-searching them in violation of federal law and without reasonable suspicion, both in violation of the Fourth Amendment. One of the arguments of the defendants is that the arrest should be simply based on the lack or should be based on that there is a reasonable probability that a crime has been committed. What they don't do is indicate what crime was committed. I read their brief carefully. I thought that was interesting. Correct. They don't suggest that there is probable cause under the trespass statute. Right. What they've done is really misread Alfred v. Hainer, which was a Supreme Court case which basically said that you need any cause of any specific crime, and that's true. But in the subsequent case of Alvin v. Hainer, which was decided after the briefing in this manner, which is 446-53935 at 937, that specifically states that the officer has to have a belief that a crime had been committed. Then it sets forth that you have to have a specific crime that has been committed. And then it went over whether the impersonation was sufficient to support the probable cause. I guess the question is the officers don't have to know what the specific crime is necessarily at the time. They can be wrong as long as somebody comes along later and says, yes, but there was probable cause for this. That's correct, Your Honor. That's not a dispute, but the problem here is that there's no specific crime. Their argument is that there was a crime, period, and we don't know what it is, but surely there was some criminal activity. We just don't have an idea. That's insufficient to support probable cause. You have to have a specific statute that you have violated and that you have to have probable cause that has been violated if it's a specific intent crime as 602. It looked to me like they basically have some sort of understanding or maybe not understanding but a desire to remove from this particular project elements that have not been conducive to a robust, healthy project. What they have is an unconstitutional policy to arrest people without probable cause because they believe that it is a proper and good thing to do in that community. And they've also decided that they have a good and proper to search people, strip search them without reasonable suspicion in violation of the Fourth Amendment. So their policy is that because they think that there is some underlining good to violate the constitutional rights of the people that they should be able to do it. And actually, it has just the opposite effect because it informs the people in the community that the police cannot be counted on to protect their rights. Let me break this down just a little bit. So there's the claim against the officers and then the claim against the city and county as an entity under Monel. That's correct. So if you were to take the position, as you do, that there was no probable cause, with the officers, and I'm not sure I understand this is what the district court did, but I think it is what the district court did. The district court went on to say, well, nonetheless, the officers are entitled to qualified immunity. Correct. Under these circumstances because I think what the record tends to show is that the supervisors at this particular station, this is what they had arranged with the housing authority, and these officers were just doing what had been carried. Therefore, under the circumstances, they should be entitled to qualified immunity. So what's your response to that? It is true that it is a policy, but because there is an unconstitutional policy, that doesn't relieve the individual officers from their obligation to follow clearly established law. And it is clearly established that you cannot arrest a person for 602L, now M, without the specific evidence that the person has been there for over a week, two days, specifically with the intent to dispossess. They have an obligation under the law to follow that. Further, they have an obligation under the law to not strip search people without reasonable suspicion, both from the federal law, and if there's any question about that. I want to take a strip search a little bit at the end after he gets down to the station. Okay. So you say no qualified immunity here. Most definitely. Okay. So then the county, they also sued the county for maintaining this policy. That is the police department. That's correct. And the district court judge, I can't remember correctly, but I believe the district court judge here granted summary judgment on the Monell claim. That is correct. And we believe that was incorrect because the testimony of the officers, as well as the sergeant, is that their immediate sergeant, defendant, sheriff, as well as the other sergeants, as well as the higher-ups, the captains, the lieutenants, and the commanders, have for 17 years indicated that, and that's how long Officer Goff had been employed by the department, had advised him that they must arrest people under 602L without the specific intent to dispossess. So if we have a policy or a practice that's been going on for 17 years and it's enforced by the command staff, the lieutenants, the captains, and the command, and the length of the time. Let's see, you sued the sergeant, I believe, Schiff. That is correct. Schiff was knocked out of this. That is correct. It's hard to characterize Schiff as a policymaker. That is correct. He's not. There's a difference between municipality liability and supervisorial liability. Under municipality liability, you have to have a policy, and a policy requires a longstanding history of this type of activity. There's many ways to do it. Well, Schiff was, in doubt, at the scene. Right. But under supervisory liability, you have liability for your action in action as a supervisor and for your acquiescence in the unlawful constitutional problems that are complained of. And in this particular case, Sheriff, he states that he, one, himself, arrests people for 602L without the intent to possess and directs others to do so. He is aware that the officers arrest individuals in the same manner and that this is consistent with the policy. So he has acquiesced in this unconstitutional conduct that is complained of, and he is a supervisor, and had he indicated that they should not do so, that would have prevented it. But he acquiesced in it. And this is the same for the search. It's even stronger for the strip search. Was he involved in the strip search? There's a dispute over whether or not there was the extent of the search. Well, there's the only question there is was he required to drop his pants and bend over and cough. If he did, if that happened, there's automatic liability. But that's a major dispute, isn't it? Well, that he did that? Yes. Well, that's correct. That's why they have courts. So that's a question of fact for the jury to decide. And at this level, we must take the evidence in the last most favorable to the plaintiff, and that's what the plaintiff states. Did we know where the sergeant was at the point? The sergeant is the duty sergeant at the time. Under the law, the duty sergeant under 4030 of the Penal Code has the responsibility under penalty of criminal prosecution to ensure that his men do not strip search people without first obtaining prior authorization from him. And he specifically states that he does not so require authorization for strip searches where you drop your pants and bend over and cough. Had he done that, this wouldn't have happened. His action or inaction was a cause of the constitutional violations complained of because he allowed, he had a duty not to allow the strip searches without probable cause or reasonable suspicion, and he didn't do that. So in that regard, he's liable, as well as the fact that he acquiesced in it as well. As I understand this correctly, the judge took that issue away from the jury? That is correct, because on summary judgment, the court threw out the supervisory liability and the Monell issue. So the search issue never was presented to the jury? No, the search issue was presented to the jury, but just as to the individual officer. Oh, I see. And that would be the final item. The judge also, he ruled that there was no basis for supervisorial liability. I think that's clear that that's in error, abuse of discretion. And I just note that while 4030 of the Penal Code clearly says that the officer, they acknowledge he's a duty supervisor, and as a duty supervisor would have these statutory obligations to ensure that you have reasonable suspicion when you conduct a strip search, and the absence of the refusal to do that was a substantial factor in causing the search, the attorney for a sheriff won't even address that issue. That issue is so strong that they don't even address it, as well as the acquiescer. I have one question, which goes really to the question of whether the law was clearly established. The city cites something from the Hoyt case, which might be construed as dicta, but the quotation is that the Penal Code, despite its prohibition, nonetheless allows thorough clothing searches. So if the Ninth Circuit was confused on that point, it seems to me the law was also confused. It allowed searches? I'm quoting from their brief at page 22, thorough clothing searches. Oh, thorough clothing searches. That's what the, it's, well, let's start looking. Kind of pat down and not. Yeah, well, we're not complaining of a thorough pat-down search. Well, even if it were, even if it were thorough pat-down searches, there'd be questions with that, but that's not what we're complaining about. This is a case where the person dropped his pants. Yeah, I understand. So that's. That's not a thorough, you're saying that's not a thorough clothing.  They dispute that he dropped his pants, had him lower his pants. They looked over, and then they looked into his underwear and then had him bend over and cough. They dispute that. Their question is if, did they have reasonable suspicion to have him drop his pants, bend over, and cough? And under recent decisions, it's kind of clear that when you conduct a strip search prior to determining whether the person is going to be released from custody, i.e. placed in the general housing population, that type of search, the unconstitutionality of it is plain. So they won't argue that he dropped his pants and bent over and coughed, and therefore that was proper, because clearly not. Their argument has never occurred. And, of course, the standard is that you have to look at the matter favorable to the plaintiff and the felon in this matter. And with that, I'll reserve the balance of my time. Good morning, Your Honors. May it please the Court. I'm Sean Connolly, Deputy City Attorney on behalf of the City and County of San Francisco, Officer John Connifery, and Officer David Goff at the outset. I want to say it's a privilege to appear here in front of this panel in this beautiful building. As to the Monell issue, the Court is bound by what was in the record at the time Judge Alsup ruled on the motion. There was no evidence produced during discovery or provided to Judge Alsup at the summary judgment hearing regarding a policy of any kind. There simply is no evidence in the record on which Judge Alsup or this Court can say there was a policy and that it was unconstitutional. Somewhere, was there a declaration or something of Schiff himself saying that this policy had gone on? Your Honor, as to Schiff, who's represented by Mr. Kelly here, I would have to ask if you could defer that question to – Okay, but I guess you're saying there was no evidence of Monell policy, and I'm just wondering if there's something from his declaration from which one could – from which a rational jury could find the existence of a policy. I can't answer that question now, but I'll – Well, I ask you this question. You seem to argue that if evidence wasn't there at summary judgment, nothing that later happened would affect it. But is that true, that you can't reverse summary judgment when a trial, something else comes up? I'm not sure I understand the question. I mean, the Court – Well, I understood you to say at the moment of the summary judgment, there was nothing in the record. But can't we look at what came afterwards at the trial? Yes, you can. And – Well, that's the real question, to deal with that. I don't know what came after a trial that would give – Well, I think Judge Canby already put his finger on it. You have a declaration of a sergeant that he doesn't – he permits some things. And that seems to represent what he's learned, how he's been trained. Well, I don't believe, even given Schiff's declaration, that that constitutes an unconstitutional policy under Monell. Well, it might be enough to get beyond summary judgment. I don't know. I don't think so, but I don't know. As to the probable cause issue here, I want to make clear that the city and the police officers maintain the following. The record is replete with what it was that the appellant was cited for. He was cited for 602L. That was sort of the generic trespass motion statute at the time. L has become a new statute. Appellant's counsel just argued Alfred v. Hainer. Alfred v. Hainer was overturned by the Supreme Court in Devenpeck v. Alfred. There was a lot of discussion in the trial court, both at the Rule 50 motion and during the motion for new trial, where appellant argued that there was insufficient probable cause for a 602 arrest and that because 602 required specific intent, there was no evidence or probable cause of the specific intent element. That's what plaintiff argued down below, and that's what appellant argued in his brief. Judge also dealt with this according to law. The law is, and plaintiff and appellant has cited GASHO continuously throughout this, and GASHO stands for the proposition that if a person is arrested for a crime that requires specific intent, there must be some evidence of that specific intent to establish probable cause. What also said and asked and what became clear at the hearing below was that besides 602L, there were other trespass statutes that could have applied, for instance. Are you dropping 602? We can drop 602 under Devenpeck. Do it. I'm sorry? Are you conceding that? No. Well, I want to ask you about 602. Okay. As I looked at the California case decided, that seemed to apply to somebody who settled in on somebody else's property. It didn't seem to apply to a casual passerby. I mean, if I walk on somebody's grass and it's not my property, can I be arrested for a misdemeanor trespass? Yes, you could be arrested. You may not be convicted in front of a jury or a court trial, but for probable cause purposes, you could be arrested. What if the officer sees me walking over my neighbor's grass? I'm sorry? Well, what would the probable cause be if an officer saw me walking over a neighbor's grass? Well, in this case, it wasn't as simple as that. It was someone who there was a gated community with signs posted, and that person who owned that grass had asked police officers to tell people to stop trespassing on their grass. Well, they could have asked for you. They could have very easily asked for a man to move on. They didn't. They could have, but they didn't because, as the officer stated here, they knew the plaintiff had been arrested in this area for selling controlled substances or possession with intent to sell, that he had been arrested in the past for trespass. Because of those two arrests that they were knowledgeable about, they thought there might be a stay-away order related to this person, which is why they had to do further investigation. It turns out there was no such stay-away order. But getting back to what Judge Alsop did, which is in accordance with law, he said, Plaintiff, it doesn't matter that it was 602 and it may have required specific intent because there were other closely related crimes he could have committed, and there were a list of other trespass statutes. I'm sorry? What are they? 602.5. No, in so many words. None of these other crimes were abriefed in your brief. Well, they're discussed in the Rule 50 hearing. No, but they're not in your brief. You don't go through any of them in your brief. I apologize. Can you tell me in so many words what one of the other crimes was? Not say numbers, but what was the crime? 602.5a, every person who enters or remains in any non-commercial dwelling house, apartment, or other residence without the consent of owner or his agent is guilty of a misdemeanor. Is that a house? Did I hear you correctly say house? It says a commercial dwelling house, apartment, or other residential place. Yeah, it's not out on the grass. There was a – It was out by the pool, wasn't it? I'm sorry? He was out by the pool, wasn't he? He was in a children's playground inside an enclosure. Yeah, he wasn't out by anybody's house. Case law extends this to the common area inside the enclosed area. Are you making this up as you go on? Is there a case? No. No, I'm not. And the reason is we had a full discussion of all the applicable statutes at the Rule 50 hearing. But what is the case that just supports your position, that statement you just made right now? I don't have a case for that because I was trying to respond to the specific question. I mean, you started to – you didn't really know. You started to read the first part of the statute. It seems to me you're just making it up as you go along. But maybe you can find something better. I have 602.8 was one that Judge Alsop relied on, which is another trespass statute, which is in the record. What are the words of it? The words are quite important, you know. I can read you the statute, if that's what you're asking. 602.8. Any person who, without the written permission of the landowner or the owner's agent or the person in lawful possession of the land, willfully enters any lands of under-cultivation or enclosed by fence, belonging to or occupied by another, or who willfully enters upon uncultivated or unenclosed lands where signs forbidding trespass are displayed at intervals not less than three to the mile along the exterior boundaries and all roads and trails entering that is guilty. You know, I read that, and it sounds very much like something protecting agricultural land, the land of the country. Do we know there was a complete enclosure by a fence here? Yes. There was evidence in the trial testimony of that by both the police officers and all the police officers that testified at trial. In the record you have in front of you, it's in the testimony found in the supplemental excerpt of record. How do you get in? I mean, somebody has to open a gate to get in there? There are gates at certain parts around the perimeter that are supposed to be locked but are not because the locks are broken. This is also part of the trial testimony. At those entrances are where the signs are posted about no trespassing and what people are supposed to do who are there to visit residents. If I could continue to address Judge Noonan's point, we also discussed loitering statutes that were applicable. And I want to get to what Judge Alsup found, which I think is relevant. Those other statutes could apply, and they are general intent crimes. And under Alfred V. Hainer, which was maybe the law at the time of this trial, and Devin Peck later, Devin Peck said it doesn't matter what crime you arrest for as long as you have probable cause for some crime. Defendants have always maintained, and appellees here, have always maintained that the 602L was appropriate. It was the appropriate charge to arrest the plaintiff on at the time. The police officers had ample probable cause as to 602L. And as Alsup pointed out, even if they were wrong under these circumstances, they would have been entitled to qualified immunity because of any sort of anything unclear about the constitutionality of that type of arrest. How much time do I have left? Before I yield the podium, I just want to point out one thing about the statute 4030 that has come up in the course of this appeal. That statute was never in plaintiff's complaint. He never put anyone on notice that he was alleging a cause of action pursuant to that statute. It never came up during discovery. It never came up as the case management comments. It was not mentioned at the pretrial conference. It was not mentioned at the Rule 50 hearing. Judge Alsup never had an opportunity to address 4030 specifically. It was only in post-trial motions where it first was casually mentioned as a basis for a violation that it first came up. 4030 does not apply to these situations where someone is being held in a holding cell at a precinct station. The terms of the statute and the statutory scheme of 4030 explicitly apply to the county jail facility that is going to process pre-arraignment detainees. And it specifically contemplates those people who are going to be held in custody or not cited. The statute does not apply in this case. And I do want to bring one case to the Court's attention that was not listed, and that is ---- If you're going to release somebody, you can go ahead and strip search them. But if you're going to put them in custody, you have limits on it. Is that your ---- I'm sorry, Your Honor. You're saying that the proper interpretation of that statute is that if you're going to keep somebody in custody, you have limitations on that statute on strip searches. But if you're just going to give them a ticket, you can go ahead and strip search them. Yes. My response is correct. And the statute was passed as part of a ---- in response to a series of strip search cases that were being ---- that were coming out in the courts at that time to govern these county facilities on how they handle different classes of pre-arraignment detainees. You know, we do have the question, what if these officers and the sergeant knew what the law was? And my recollection is that quite a lot of publicity was given to those strip searches and to the remedy for them. So the officers and Sergeant Schiff must have known that there had been a lot of bad publicity and then a remedial statute. Now, according to the statute, the strip search is illegal if the sergeant doesn't sign off. It's a crime. If there's a strip search. Yes. If there's a strip search. There was no strip search here. And even if you look to 4030 ---- Were the undergarments not there? The undergarments were the boxers, the boxer shorts were incidentally exposed. That's what the statute says. The statute says an inspection. It says undergarments. It does. And the sergeant didn't seem aware of that. The statute says an inspection of the ---- a rearrangement of clothing to inspect undergarments. Later on in the statute, though, it says a thorough clothing search is okay. First of all, I don't think that's ---- The clothing, sure, but not so as to look at the undergarments. I respectfully disagree. I think the statute is saying if 4030 applies in this situation, which it does not, even if it does, this was not a search contemplated by 4030 by the terms of 4030. And I would also mention that's in accord with federal law. And Judge also ---- The federal law, we know the general law is searches are banned by the Fourth Amendment. They're unreasonable. Then we look at state law to see what the state thinks is reasonable. The state has enacted this statute against strip searches. And you don't want to go with the definition of a strip search. I think that if you accept Plaintiff Raquelm's version of what happened here, it's not a strip search under 4030 by the terms of 4030, even if you apply 4030. By the terms of the statute? I'm sorry? Yes, by the terms of the statute. Because one part of the statute talks about inspecting those garments, as opposed to incidentally viewing them. And later on in the statute it talks about allowing and how a thorough clothing search is okay. A thorough clothing search could mean just feeling up and down. To interpret the statute that way means that, you know, kids nowadays wear their pants low and baggy and the tops of their boxer shorts are exposed. And that would mean just walking into a holding cell with your pants lowered, with the top of your underwear showing, under that interpretation would be a violation of 4030. The definition, it says, as used in this section, strip search means a search which requires a person to remove or arrange some or all of his or her clothing so as to permit a visual inspection of the underclothing, breasts, buttocks, or genitalia of such person. So if you don't ask somebody to rearrange or remove their clothing, it wouldn't be a strip search. And so your example wouldn't fit the definition. I also ask the Court to look to Subsection E, which I think elaborates on the type of search allowed under 4030. I don't want to take my co-counsel's time. I don't know how much time is left. We already have. Okay. At this point, I will yield. He's got three minutes and 55 seconds. Okay. I'm going to yield at this point. Thank you. Good morning. May it please the Court. My name is T. Kelly, and I represent Sergeant Schiff. I'd like to address specifically the issue of whether or not there was a declaration or a deposition that indicated that Sergeant Schiff agreed with any sort of policy of arresting people without probable cause. There is no testimony. No, I think what I was referring to is not that he agreed with some policy, just that there was some testimony somewhere from which I would think a jury might infer that there was such a policy. And I don't believe that there is any such testimony. At the summary judgment phase, there were only four depositions that had taken place in that case at that time, the plaintiffs, the two arresting officers, and Sergeant Schiff. And as a result of the summary judgment brought by my client and by the city and county, Judge Alsup made some fairly specific findings relating to the deposition testimony. And I'd like to highlight that for you because it's fairly concise, and it forms the basis of not only the reasons why summary judgment was proper in my client's favor, but also the attorney's fees motion and also the motions for reconsideration and sanctions motions that followed. Judge Alsup specifically held that the summary judgment record was undisputed, that Schiff had not directly participated in the arrest or search. He did not make policy for the police department. Schiff only trained officers in the sense that, quote, if an officer asked me questions, I provide the answers that I can or the resources where to get those answers. And he's quoting from Schiff's deposition. Judge Alsup also noted that Schiff testified at his deposition that he could not remember ever training officers, Goff and Conafree, on how to make arrests for trespass, and he further found that Schiff's sole contact with a plaintiff occurred after he was allegedly deprived of his Fourth Amendment rights. Schiff did not even know of the arrest or search until after the fact. Finally, there was no evidence that Schiff was required to train and supervise and then failed to do so. The testimony that came out was essentially that Sergeant Schiff happened to be sitting at the police station when Officers Goff and Conafree arrived with Mr. Edgerly. He was not aware that they were there. Was he the duty officer? He was the officer on duty at the time, yes. He happened to be sitting there. He did happen to be sitting there. He was on duty. Yes, he was. No, I'm not suggesting that he wasn't on duty. He was on duty and he was doing his administrative duties, but he was not aware of any of the conduct that occurred here, whether or not there was probable cause, whether or not it was a strip search. The only contact he ever had with this entire matter was after the arrest, after the search, after a background check to determine whether or not there were any outstanding warrants, Officer Conafree came to Sergeant Schiff and said, We're recommending that we cite and release this person. He signed off on it, and that's why he got sued. Well, the officers obviously had some idea of what the sergeant committed, and they went ahead and searched him, and it turns out to be a strip search. I think it's a fair inference that that was the custom of the sergeant to sign off on that. Well, he doesn't have to sign. Unless it's a strip search. I think you've got at least a jury question as to whether it's a strip search. But whether or not it was a strip search is irrelevant to my client's case, or that is the case. Because if it's a strip search, he is responsible if the officers in the station assume that they do it. And I think people, there's some testimony at some point, indicate, well, this is okay. We do this sort of thing all the time. There is no testimony to that effect. And let me say, if it was a strip search, Sergeant Schiff still can't possibly have any liability in this case. Why? Because he was not told in advance that they were doing a search. He didn't know what was going on. If he's made a habit of never restraining the officers, of course he can have that. There is no evidence whatsoever to suggest that my client or any other sergeant at that police station made a habit of – Why would they do it, unless that was the custom? Well, your question presumes, one, that it was done. Yeah, I know. We're presuming that. Presuming they show a strip search. Why isn't it a fair inference for a jury to say, well, that's the way that the police station runs? And my point is that even if that inference was made by the jury, my client, Sergeant Schiff, cannot be held responsible for it. Because what you're talking about is an alleged potential policy of the police department, and my client is not in a policymaking position. No, I'm not talking about that at all. I think I'm talking about causation. His way of running the police station causes the officers to not obey the statute. And what I'm saying is, in fact, there is no evidence to support that. And also, you said a critical thing, that his way of running the police station. Well, he's not running the police station. He has levels of bureaucracy above him, and there was testimony that went through, above him are lieutenants, above them are captains, there's commanders, then there's the chiefs. And the policymaking, the way that things are done, right or wrong, is directed by people that are far above Sergeant Schiff in the food chain. And that is precisely why Judge Alsup made very clear that not only was summary judgment appropriate, but that we should be awarded attorney's fees because the case was frivolous. And if this case against Sergeant Schiff is not frivolous, then I would think that the court would be hard-pressed to find one. My earlier question went not to the liability of your client. It went to the liability of the county or the city. And the question about his testimony was not whether he, in my question about his testimony, was not whether he said something that indicated that he authorized unlawful arrests or strip searches, but whether the trespass arrest system was one that somebody in the county had authorized as a policy. And the only testimony from Schiff about the trespass issue was that the people that lived at this particular housing apartment complex had been concerned about drug dealing and that they wanted trespassers arrested. And they had told that to the department, and the department had tried to be careful to monitor the situation there and arrest people for trespass. There's nothing about a policy of just willy-nilly arresting people when they want to. And there's no testimony to that effect. That is a misrepresentation of the record. And I would encourage the court to look at the actual deposition testimony that's attached to the declarations and read them. Well, I don't want to go, you know, get in a dispute with you what Schiff testified to, but his testimony, his deposition is pretty clear that the captains and the lieutenants and the higher-ranking officers wanted the officers in the street to arrest. They wanted the officers in the street to arrest? Without probable cause, under they just authorized. Go ahead and arrest under 602L. But they don't say that it's without probable cause. There's nothing. They've requested high-profile police presence in those areas, and they have specifically instructed the lieutenants and the sergeants to instruct the officers to arrest trespassers of those specific projects, and that is as a result of the attempt to abate the complaints from the residents. But, yes, arresting trespassers. There's nothing about arresting trespassers without probable cause or doing it unlawfully. Certainly one could be arrested for trespass. There is no suggestion whatsoever that there was a policy for arresting people without probable cause. There's nothing in the record. There's one final point I'd like to make because it was an issue that was raised in a reply brief, and that is about our second motion for sanctions. Judge Alsop made his award granting our second motion for sanctions. We had two motions for sanctions, one both of which came from what Judge Alsop found to be privileged motions for reconsideration, and the second motion for sanction was granted before an opposition was filed by Mr. Haynes. I'd like to point the Court to the case of Ford v. Alfaro, 785 F. 2nd 835. It's a Ninth Circuit 1986 case. In that case, this Court has the ability to find that if, in fact, it was technically premature, that it could be harmless error. Thank you. Thank you very much. You have a few minutes in rebuttal. How much? Five. Five. Oh. Well, let's see. First, there's a lot I'd like to go over, but I'm going to go over a few things as I can. First we'll go over the last. Okay. Sheriff, what is his involvement with the arrest? Well, this is what Sheriff, he states. First, he's not aware of the time requirement. Now, that's indicated at the deposition, and it's page 72, lines 4 through 19. And as the Court noted, as a supervisor, for over eight years, the captains have been advising him to arrest people. Now, on the record, that's page, Exhibit A, page 49, lines, where it says we have, I'm reading from, page 49 of Exhibit A of the plaintiff. And that's, we have had upwards of six captains in the eight years that I have been here. Each captain has personally made contact with the managers, and they go on and say they need to have him arrested. He states, let me get the record citation that, okay. He says that, this is page 50, Exhibit A, so then, this is Sheriff, the question, all right. So then, now you have attempted to make arrests pursuant to the captain's directions. Mr. Kelly, with respect to 602L, Mr. Haynes, yeah. With respect to 602L, answer, yes. Yes, I have. But I need to qualify that as I'm the supervisor, okay. It's very likely that if I came in contact with them, I would instruct an officer to do it or do it jointly. So he's a supervisor. He's aware of the policy of arresting people without the intent to dispossess, and not only does he personally do it, as he said, but he directs others. So it's clear that he has acquiesced in the unlawful conduct. He's aware of it, participates in it, and directs others to do it. And the same with regard to the unlawful search. With regard to the statute, he's not even aware that you have to have reasonable suspicion to have a person lower his pants. So his inaction or action with regard to this matter has allowed both for the arrest and the search. And he was the duty sergeant at the time. That's why he approved the arrest, and he had no problem with the search. And just to touch up on some points, if you look at Exhibit M1, the counsel indicates that he refers to 602.5. At Page 4, Exhibit M of the Plaintiff's Opposition, there's a specific statute that says that that type of arrest would be improper. And the case for that is 29 Cal 3364, and it refers to 602.5. And, again, that says if you go into somebody's house, then you have a different circumstance. You didn't go into anybody's house. The same thing with the 602.8. This is clearly for an item under cultivation, and people going in and out of the premises all the time. It doesn't apply. Well, you know, in terms it could apply if the land's enclosed by a fence. I mean, I agree. You usually think of talking about posting it every third of a mile or something like that. You're thinking of agricultural land or something, but it just says if it's enclosed by a fence. Well, you have to look at what the intent of the statute is. It also says that you have to have written authorization from the landlord. So unless everybody's walking around with a paper authorizing everybody to be arrested, that's the problem with how they interpret the statutes. Everybody is subject to arrest, and that's the purpose of it. That means they can go arrest anybody and take them to the local police station, strip search them, but it's just a routine search by having them drop their pants in violation of the Constitution, the Fourth Amendment. Therefore, the arrest and the search is an unlawful violation of the Fourth Amendment. Thank you. Thank you very much. We appreciate your arguments, and the matter will be submitted and will be adjourned until tomorrow morning. Thank you very much.
judges: Canby, Noonan, Paez